## THE ROBERT ROBINSON.

### (Circuit Court of Appeals, Second Circuit. February 10, 1914.)

#### No. 144.

TOWAGE (§ 11*)—SWAMPING OF TOW—LIABILITY OF TUG.

A tug, proceeding with a tow of 6 boats in three tiers from New York to New Haven, when off Stratford Point, owing to increasing seas, turned and sought harbor in Bridgeport. After turning, the open barge Derby, loaded with coal, shipped water through her open hatchways and sank. *Held*, on the evidence that the tug was not in fault; the tow being properly made up, the construction of the barge one not unusual, and there being no weather conditions previously which apparently rendered it necessary to seek shelter.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Michael J. Derby, owner of the open boat Hugh J. Derby, against the steam tug Robert Robinson. Decree for claimant, and libelant appeals. Affirmed.

On appeal from a decree of the District Court for the Southern District of New York dismissing the libel which was filed by Michael J. Derby, the owner of the open boat Hugh J. Derby, against the steam tug Robert Robinson for the alleged negligence of the tug in towing the Derby with a cargo of coal from Newtown Creek to New Haven, Conn., on the 26th of February, 1910.

The libelant contends that the tug was not sufficiently powerful to handle her tow, which consisted of six boats in all, under the weather conditions which prevailed in Long Island Sound on the morning of the 27th and that she should have at once put in to Bridgeport. Instead of doing so she proceeded on until she found that she was unable to round Stratford Point when she attempted to make Bridgeport Harbor. In executing this maneuver she placed the Derby broadside to the sea which broke over her and filled her with water. She sank at 11:30 o'clock on the morning of the 27th.

Ward D. Williams and Horace L. Cheyney, both of New York City, for appellant.

Carpenter & Park, of New York City (Samuel Park, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). On February 26, 1910, the tug Robert Robinson made up a tow at Whitestone in three tiers of two boats each, destined for New Haven. The Derby was on the port side in the last tier. She was properly manned and loaded with coal. She was 90 feet long, 26 feet beam, had a freeboard of about 14 inches and hatch coamings of 30 inches, making the top

of the coaming about 3 feet 8 inches above the water. She had no covers over her hatches. She was what is called an "open boat" with about 17 feet between the coamings. Early the next morning when off Penfield Light the weather was good and though there was a dead roll on the sea, there was no indication of a serious storm. When off Stratford Point the master of the tug thought it prudent to seek shelter at Bridgeport. The wind was blowing fresh from the southwest. After turning around the Derby was the weather boat. When a little over a mile from Bridgeport Harbor she sank. Negligence is charged against the Robinson in not proceeding directly from Penfield Light to Bridgeport, but we think the District Judge was correct in holding that there was no reason to apprehend danger when they passed Penfield Light. There was no dangerous sea at that time and no necessity for going into Bridgeport. It was three or four hours after passing Penfield before they encountered seas 5 or 6 feet high. Burke, the master of the Derby, says that prior to the turn to enter Bridgeport Harbor, "no sea came on the deck, not a bit of water." We cannot find from the testimony that it was a fault for the tug to proceed on her voyage after passing Penfield Light. We think that when, three or four hours later, the weather became so threatening that it was doubtful if the flotilla could weather Stratford Point, the Robinson cannot be criticised for seeking shelter in Bridgeport Harbor.

The Robinson was powerful enough to handle such a tow, the testimony being that her usual tow is from 8 to 12 boats; in the present case she had but six.

We do not think the tug can be held liable for half the damages because the Derby was unseaworthy. There was nothing about her construction, her loading or starting with covers off which was unusual or negligent. When the tow was made up no unusual condition of the elements was to be apprehended and there was no negligence apparent in the make-up of the tow. Nothing need be added to the opinion of the District Judge on this branch of the case.

The decree is affirmed with costs.